United States District Court
Southern District of Texas
**ENTERED**

December 24, 2020
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CARAMBA, INC. d/b/a Pueblo Viejo, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-19-1973 |
| | § | |
| NATIONWIDE MUTUAL FIRE | § | |
| INSURANCE COMPANY, | § | |
| Defendant. | § | |

## <u>MEMORANDUM AND ORDER</u>

There are four expert-related motions pending before the Court in this insurance coverage dispute. First, there is the Motion to Strike the Opinions and Testimony of Neil Hall ("Hall Motion") [Doc. # 22] filed by Defendant Nationwide Mutual Fire Insurance Company ("Nationwide"). Plaintiff Caramba, Inc. d/b/a Pueblo Viejo ("Caramba") filed a Response [Doc. # 30], and Nationwide filed a Reply [Doc. # 35].[1]

Also pending is Nationwide's Motion to Strike the Opinion and Testimony of Kevin Funsch ("Funsch Motion") [Doc. # 23], to which Caramba filed a Response [Doc. # 32], and Nationwide filed a Reply [Doc. # 36]. Finally, Nationwide filed a Motion to Strike the Opinions and Testimony of Gary Johnson ("Johnson Motion")

---

[1]     Nationwide also filed a Motion to Strike the Untimely Supplemental Report and Declaration of Neil Hall [Doc. # 38], to which Caramba filed a Response [Doc. # 43], and Nationwide filed a Reply [Doc. # 45].

[Doc. # 24], to which Caramba filed a Response [Doc. # 31], and Nationwide filed a Reply [Doc. # 34].

The Court has carefully reviewed the record in this case, including the experts' reports and deposition testimony.  Based on that review and the application of relevant legal authorities, the Court **denies** the Hall Motion and the Funsch Motion, and **grants** the Johnson Motion.

## I.   <u>BACKGROUND</u>

Caramba is the named insured under a Nationwide "Premier Businessowners Policy," No. ACP BPFF 5545868791 (the "Policy").  The Policy provided coverage for Caramba's commercial property, a restaurant in Porter, Texas (the "Property"), for the period October 27, 2016 to October 27, 2017.

Caramba claims the Property sustained wind damage, and resulting water damage, in August 2017 from Hurricane Harvey.  Caramba's roofing contractor, Alejandro Gonzalez of Champion Renovation Roofing ("Champion"), inspected the Property in early September 2017, after Hurricane Harvey.  In June 2018, Champion applied a black asphalt coating to the metal roof at the Property, made temporary repairs to the tile roof, and repaired some interior damage.  Caramba filed its claim under the Policy on June 26, 2018.

The next day, Nationwide's adjuster, Cheri McGinnis, contacted Caramba's principal, Alejandro Lozano, to discuss the claim. McGinnis requested additional information, and she inspected the Property on July 9, 2018.

On July 13, 2018, McGinnis engaged Stephens Engineering ("Stephens") to investigate the extent and cause of the damage to the Property. On July 27, 2018, a Stephens representative inspected the Property, and Stephens issued its report ("Stephens Report") [Doc. # 22-4] on August 10, 2018.

On August 17, 2018, Nationwide denied Caramba's claim. Caramba retained counsel and submitted additional information, including a damage estimate from DELK, LLC ("DELK"). On February 9, 2019, Nationwide reaffirmed its denial of Caramba's claim.

On April 17, 2019, Caramba filed this lawsuit in the 410th Judicial District Court of Montgomery County, Texas. Nationwide filed a timely Notice of Removal [Doc. # 1] on May 31, 2019.

On February 14, 2020, Caramba filed its Designation of Expert Witnesses [Doc. # 20]. Caramba designated Dr. Neil Hall as its causation expert and attached his report ("Hall Report") [Doc. # 20-1]. Caramba designated Kevin Funsch as its damages expert and attached his report ("Funsch Report") [Doc. # 20-2]. Caramba designated Gary Johnson as its expert on claims processing, and it attached his report

("Johnson Report") [Doc. # 20-3].[2]   On August 28, 2020, Nationwide filed the pending motions to strike the opinions and testimony of these three designated expert witnesses.[3]   The motions have been fully briefed and are now ripe for decision.

## II.   APPLICABLE STANDARD FOR EXPERT OPINIONS

Witnesses who are qualified by "knowledge, skill, experience, training or education" may present opinion testimony to the jury.  FED. R. EVID. 702; *see, e.g., Whole Woman's Health v. Hellerstedt*, __ U.S. __, 136 S. Ct. 2292, 2316 (2016); *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) *(en banc)*; *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).  "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue."  *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 623 (5th Cir. 2018).  "This is because '[d]ifferences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility.'"  *Id*. at 623-24 (quoting *Huss*, 571 F.3d at 452).  Nationwide does not challenge the qualifications of Hall, Funsch, or Johnson.

To be admissible, an expert's proffered testimony must be both relevant and reliable.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-92 (1993);

---

[2]     Caramba also designated William Featherston as its expert on attorneys' fees. Nationwide has not moved to strike Featherston's opinions.

[3]     Nationwide also filed a Motion for Summary Judgment [Doc. # 25] which will be addressed separately.

*Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016).  The

expert testimony must be relevant and the expert's proposed opinion must be one that

would assist the trier of fact to understand or decide a fact in issue.  *See Weiser-Brown*

*Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529 (5th Cir. 2015);

*Bocanegra v. Vicar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) (citing *Daubert*,

509 U.S. at 591-92).

To satisfy the "reliability" prong, a "party seeking to introduce expert testimony

must show (1) the testimony is based upon sufficient facts or data, (2) the testimony

is the product of reliable principles and methods, and (3) the witness has applied the

principles and methods reliably to the facts of the case." *Huss*, 571 F.3d at 452 (citing

*Smith v. Goodyear Tire & Rubber Co.,* 495 F.3d 224, 227 (5th Cir. 2007)); *see also*

*Carlson*, 822 F.3d at 199.  "Reliability" requires that the proponent of the expert

testimony must present some objective, independent validation of the expert's

methodology.  *See Brown v. Illinois Cent. R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013).

The objective of the Court's gatekeeping role is to ensure that an expert "employs in

the courtroom the same level of intellectual rigor that characterizes the practice of an

expert in the relevant field."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152

(1999); *Certain Underwriters at Lloyd's, London v. Axon Pressure Prod. Inc.*, 951

F.3d 248, 269 (5th Cir. 2020); *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 194 (5th Cir. 2006).

Courts often consider various factors in determining the reliability of proffered scientific evidence, including: (1) whether the theory or procedure has been subjected to testing; (2) whether it has been subjected to peer review and publication; (3) the rate of error and the existence of standards controlling the theory or procedure; and (4) whether it has attained general acceptance.  *See Daubert*, 509 U.S. at 593-94. These factors can "help to evaluate the reliability even of experienced-based testimony." *Kumho Tire*, 526 U.S. at 151.  "In certain cases, it will be appropriate for the trial judge to ask, for example, how often an engineering expert's experience-based methodology has produced erroneous results, or whether such a method is generally accepted in the relevant engineering community." *Id.*

The Court is not required to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *Kumho Tire*, 526 U.S. at 157; *Burleson v. Tex. Dept. of Crim. Justice*, 393 F.3d 577, 587 (5th Cir. 2004); *Chan v. Coggins*, 294 F. App'x 934, 939 (5th Cir. Oct. 2, 2008).  Where the challenged opinion "is fundamentally unsupported, then it offers no expert assistance to the jury." *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).  In such cases, there is "simply too

great an analytical gap between the data and the opinion proffered." *Chambers v. Exxon Corp.*, 247 F.3d 240, *2 (5th Cir. Jan. 5, 2001) (quoting *Gen. Elec. Co. v. Joiner*, 422 U.S. 136, 146 (1997)).  "A claim cannot stand or fall on the mere *ipse dixit* of a credentialed witness."  *McManaway v. KBR, Inc.*, 852 F.3d 444, 449 (5th Cir. 2017).

The Court's gatekeeping role is no substitute, however, for the adversarial process.  *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596; *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 852 (5th Cir. 2015).

## III.   **HALL MOTION**

Dr. Neil Hall is Caramba's causation expert.  In his report, Hall described relevant weather data, particularly Hurricane Harvey's 37 mph sustained wind speed and 48 mph gust speed.  *See* Hall Report, p. 2.  He described the conditions he observed during his inspection of the Property on December 11, 2019.  *See id.* at 3-4. He stated his recommendations for repairing or replacing those areas of the Property damaged by the hurricane, and he identified those areas that were not damaged.  *See id.* at 4-5.

Nationwide asserts that Hall's opinions and testimony should be excluded because he "utilized no discernible methodology." *See* Hall Motion, p. 3. This assertion is not supported by the record. Hall used a "discernible" and widely-accepted methodology. Indeed, he used the same methodology used by other engineers in this case. He physically inspected the Property to the extent possible, he interviewed individuals who claimed to have relevant knowledge, he took photographs and measurements, he examined photographs of the Property from before and after Hurricane Harvey, and he studied weather data for the Property. Based on this methodology, and his review of the engineering report prepared for Nationwide, he formulated his opinions and prepared his Report. The methodology is reliable. The accuracy of the opinions Hall reached by using an accepted methodology are subject to cross-examination at trial.

Nationwide's primary criticism of Hall's methodology is that he relied on information from Caramba's roofing contractor, Alejandro Gonzalez. Although Gonzalez was present at the Property when Hall conducted his inspection, Hall conducted his own independent inspection and his own investigation. Hall testified that when he walked with Gonzalez through the interior of the Property, Gonzalez identified areas where he saw leaks shortly after Hurricane Harvey. *See* Hall Depo., Exh. B to Response [Doc. # 30], p. 25. Rather than rely exclusively on Gonzalez's

identification of areas with water damage, Hall independently looked for areas that Gonzalez missed. *See id.* Gonzalez, who was representing the Property owner at the time of Hall's inspection, claimed that there had not been damage to the roof at the Property before Hurricane Harvey. *See id.* at 26. There was no evidence to the contrary, and Hall had no reason to disbelieve information provided by the Property owner's representative. Indeed, Hall's investigation supported the absence of prior repairs to the roof. Hall testified that sometimes there is a difference in the color of the asphalt on the roof if there have been prior repairs, but he did not observe that at the Property. *See id.* at 35. The record does not support Nationwide's argument that Hall's methodology was flawed, requiring that his opinions be excluded, because he "blindly accepted information" Gonzalez provided.

Nationwide argues that Hall's opinions and testimony are inadmissible because he "failed to segregate covered and non-covered damages at the Property." *See* Hall Motion, p. 3. As noted above, Hall in his Report segregated the areas that he concluded were damaged during Hurricane Harvey from those areas that he believed were not damaged by the hurricane. In his deposition, Hall explained that his practice is to photograph all damage and include it in the Report. *See* Hall Depo., p. 31. In this case, he included in his Report all the damage he observed, but his recommendations are "specifically tied back to the storm damage." *See id.* at 31-32.

Nationwide cites to Hall's deposition testimony regarding acknowledging that the Stephens Report identified "a potential leak in the HVAC at one of the HVAC lines," and agreeing it was "possible that one of those leaks caused any of the interior damage inside the property, below the insulation." *See id.* at 27. Hall explained, however, that "even if it turned out" that Stephens was correct about a potential leak in the HVAC lines, it would be "a minimal percent of damage compared to the total amount of damage that [he] saw, and the overwhelming and exclusive causation would have been through the roof deck." *See id.* at 27-28. Although Hall recognized the comments in the Stephens Report regarding a "potential" leak and agreed it was "possible" an HVAC leak caused some minimal interior damage, he expressed clearly his opinion that "the overwhelming and exclusive causation" of the interior damage would have been from the roof. Given Hall's opinion, there was no requirement that Hall segregate out the "possible" damage caused by a "potential" leak in the HVAC system. His failure to do so is not a basis to exclude his opinions and testimony.

Nationwide has moved to strike Hall's Supplemental Report [Doc. # 33-5] dated September 26, 2020, and his Declaration [Doc. # 33-3], dated October 1, 2020, as untimely. The deadline for Rebuttal Opinions was March 30, 2020. *See* Docket Control Order [Doc. # 12]. On October 2, 2020, Caramba attached the Supplemental

Report and Declaration to their Response [Doc. # 33] to Nationwide's Motion for Summary Judgment.

In support of its Motion for Summary Judgment, Nationwide relied in part on Hall's deposition testimony and a Declaration from Nationwide's expert, Eric Moody, dated August 26, 2020. In his Declaration, Moody focuses on a "Wind Verification Report" issued by CoreLogic ("CoreLogic Report"). *See* Moody Declaration [Doc. # 25-8], ¶¶ 6-7. In his Declaration, Hall criticizes the CoreLogic Report, noting specifically that the weather data collected by the National Weather Service "does not substantiate the wind speeds" reported by CoreLogic. *See* Hall Declaration, ¶ 6.

In his September 26, 2020 Supplemental Report, Hall expressed his belief that Nationwide cited his deposition testimony out of context, and he explained and quoted his actual deposition testimony. *See* Hall Supplemental Report, pp. 2-3. Hall also addressed the problems with the CoreLogic Report. *See id.* at 3-6. The Hall Supplemental Report and Declaration address issues raised by Nationwide's characterization of Hall's deposition testimony included in the Motion for Summary Judgment filed August 28, 2020, and address the CoreLogic Report that was the focus of the Moody Declaration dated August 26, 2020. Therefore, to the extent leave of

Court is required for Hall's Supplemental Report and Declaration, it is granted.[4]  The

Motion to Strike is denied.

## IV.   <u>FUNSCH MOTION</u>

Caramba designated Kevin Funsch as its damages expert.  Based on Hall's

causation opinions and his own inspection of the Property, Funsch prepared a Report

("Funsch Report") [Doc. # 20-2].  Funsch calculated the total repair cost for the

damage to the Property at $190,088.93.  *See* Funsch Report, p. 14.  Nationwide argues

that Funsch's opinion should be excluded because it is based on Hall's inadmissible

opinions, because he committed "numerous errors," and because he testifies almost

exclusively on behalf of insureds represented by Caramba's attorneys.

As explained above, Nationwide's assertion that Hall's opinions should be

excluded is unsupported by the record.  Because Hall's opinions are based on reliable

methodology, Funsch's reliance on those opinions is not a basis to exclude Funsch's

opinion on damages.  It is standard practice to have separate causation and damages

experts, and to have the damages expert rely on causation opinions from the separate

expert.  Indeed, in this case, Nationwide has retained a separate damages expert,

---

[4]   "A schedule may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4).  "If a party fails to provide information [required by the Federal Rules], the party is not allowed to use that information or witness to supply evidence . . . unless the failure was substantially justified or is harmless."  FED. R. CIV. P. 37(c)(1).  The Court finds good cause and substantial justification, and grants consent for Caramba to file Hall's Supplemental Report and Declaration.

Randall Taylor.  As is the standard practice, the causation expert, usually an engineer, identifies the damage caused by the allegedly covered event.  The damages expert, who is usually not an engineer, must rely on the causation expert to identify the damage caused by the event covered by the insurance policy.  The Court rejects Nationwide's challenge to Funsch's opinion based on his reliance on Hall's causation opinions.

Nationwide argues also that Funsch made numerous errors.  Nationwide notes, for example, that Funsch's calculation of repair cost included repairs to the rear dining room and the second story office, even though parts of those areas were not damaged.  Funsch testified in his deposition that the undamaged area shared a continuous ceiling with an area that was damaged.  *See* Funsch Depo., Exh. C to Response [Doc. # 32], p. 68.  In situations involving continuous ceilings, it is necessary to perform some work, such as painting or staining, in some undamaged areas.  *See id.*  Nationwide's damages expert, Randall Taylor, agreed.  In his deposition, Taylor testified that it was reasonable and a common methodology to calculate the cost for painting the entire ceiling if one part of that ceiling needed repair.  *See* Taylor Depo., Exh. 4 to Response [Doc. # 32], pp. 99-100.  Any challenge to the inclusion of the cost of work on undamaged areas of the Property can be raised through cross-examination at trial.

Nationwide argues that Funsch's opinion should be excluded because he used the wrong type of tile in his calculation.  There is a disagreement in the record regarding whether "S tiles" and "barrel tiles" are different tiles or, instead, are different names for the same tiles.  It is unclear from the record at this stage whether the "barrel tiles" included in Funsch's opinion were the same as or different from "S tiles."  If Nationwide disagrees with Funsch's calculation, on this tiles issue or any other matter, it can address those issues during cross-examination at trial.  There is nothing, however, to support a ruling that Funsch's opinion is inadmissible under Rule 702 and *Daubert*.

Nationwide asks the Court to exclude Funsch's opinion in this case also because Funsch testifies almost exclusively for Caramba's attorneys.  Nationwide has not presented evidence that establishes, or even suggests, Funsch has an actual bias or used a flawed methodology because he is often employed by Caramba's attorneys.  It is not uncommon for lawyers to have experts they trust and are comfortable working with.   Indeed, Eric Moody, Nationwide's causation expert, has worked with Nationwide's lawyers in 30-50 cases.  *See* Moody Depo., Exh. E to Response [Doc. # 32], p. 92.  There is the perception that insurance companies often prefer not to hire experts who have worked for insureds.  For example, Neil Hall testified that, prior to Hurricane Katrina, approximately 95% of his work was on behalf of the insurer.  After

Hurricane Katrina, however, he began to work for insureds and "the work didn't come in from [the] defense." *See* Hall Depo., p. 125. Evidence that insureds, and not insurers, choose to retain Funsch as an expert is not evidence of flawed methodology or actual bias. In any event, Nationwide may explore the amount of work Funsch does for insureds on cross-examination at trial, if it chooses.

Nationwide argues that Funsch is biased because he is "social friends with employees of [Chad] Wilson's firm. *See* Funsch Motion, p. 11. Funsch testified in his deposition that he races sailboats with a man named Ken Horn, who does not appear to be an employee of Wilson's firm. *See* Funsch Depo., p. 51. Funsch testified also that he and Wilson have known each other for many years, both race sailboats, but he does not "really hang out with Chad [Wilson] as much." *See id.* Nationwide can cross-examine Funsch at trial regarding any friendship with Wilson and regarding the compensation he has received from Wilson's law firm. There is no basis on this record to exclude Funsch's opinion and preclude him from testifying at trial. As a result, the Funsch Motion is denied.

## V.   <u>JOHNSON MOTION</u>

Caramba designated Gary Johnson as its expert on "Defendant's claims handling and implications of failures to fulfill duties to Plaintiff made the basis of this lawsuit, including but not limited to, proper claims-handling standards [and] the

failure of Defendant to meet their requirements under these applicable standards."
Plaintiff's Designation of Expert Witnesses [Doc. # 20], p. 3.  In his Report, Johnson
expressed the opinion that Nationwide "did not adjust the commercial claim properly"
and "failed to extend coverage/payment that would cover necessary
replacement/repair for the roof system, building exterior and interior water damage."
Johnson Report [Doc. # 20-3], p. 3.  Nationwide has moved to strike Johnson's
opinions and testimony because his Report lacks a complete statement of all his
opinions, because his opinions lack a reliable methodology and are simply *ipse dixit*,
and because expert testimony on bad faith is irrelevant.  *See* Johnson Motion, p. 2.

Nationwide argues first that Johnson's opinions and testimony should be
excluded because his Report did not contain all of his opinions.  A witness retained
to provide expert testimony must provide a written report that contains "a complete
statement of all opinions the witness will express and the basis and reasons for them."
*See* FED. R. CIV. P. 26(a)(2)(B)(i).  Nationwide's Rule 26 argument is based entirely
on a flippant answer Johnson gave during his deposition.  When asked if his Report
contained all his opinions, Johnson answered "no, sir" and then stated that any other
opinions "would be based on the questions" Nationwide's attorney asked.  *See*
Johnson Depo., p. 67.  Johnson testified further, however, that there were no other
documents containing additional opinions and that he had not been asked to

supplement or amend his Report.  *See id.*  The Court cannot find from this record that Johnson's Report fails to contain all his opinions.  Moreover, if Johnson failed to include all his opinions in his Report, the Court would be inclined to exclude, on that basis, only the additional opinions, not the opinions that were included in the Report.

Nationwide argues also that Johnson's opinions should be excluded because they are not based on a reliable methodology and are, instead, mere *ipse dixit* of the witness.  As noted above, Johnson stated generally that Nationwide did not adjust Caramba's claim properly and improperly failed to pay Caramba's claim.  *See Johnson Report*, p. 3.  He stated in his Report that Nationwide failed to perform a reasonable investigation, *see id.*, and testified in his deposition that adjuster McGinnis should have performed a better investigation.  *See* Johnson Depo., p. 57.  The underlying basis for these opinions is Johnson's subjective belief that Nationwide knew or should have known in July 2018 that it was "reasonably clear the claim was covered."  *See* Johnson Report, p. 3.  Johnson reaches this opinion "based on the contractor's statement during inspections that they had to re-secure metal roofing and cover with coating to mitigate water damages to interior."  *See id.* at 4.  Similarly, Johnson testified in his deposition that McGinnis "should have explored more of what the . . . repair contractor who did the temporary repairs was saying and stating."  *See* Johnson Depo., p. 57.  Johnson identified no other analysis for his opinions.

It is undisputed that the repair contractor, Gonzalez, performed no repairs to the roof until June 2018, almost ten months after Hurricane Harvey.  Johnson assumed this was because Caramba did not discover the roof damage until shortly before June 2018.  *See id.* at 114.  Gonzalez testified, however, that he inspected the roof on or about September 5, 2017, at which time he determined that the roof's "metal panels were bent, dented or creased."  *See* Gonzalez Depo. [Doc. # 25-1], p. 84.  He had previously testified that he would have brought damage he observed to the attention of Caramba's owner.  *See id.* at 83-84.

Fundamentally, Johnson's opinions in support of Caramba's extra-contractual claims are nothing more than "credentials and a subjective opinion" and, therefore, his "opinion that 'it is so' is not admissible."  *See Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987)).  To establish reliability under *Daubert*, an expert must provide objective, independent support for his methodology.  *See Brown v. Illinois Cent. R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013).  "The expert's assurances that he has utilized generally accepted [principles] is insufficient."  *Id*.  Caramba argues that Johnson gathered the facts from the claims file and the Stephens Report.  See Response [Doc. # 31], p. 4. The issue under *Daubert* is not the reliability of the information in the file, but rather the reliability of Johnson's methodology is analyzing that information.  *See Collins*

*v. Safeco Ins. Co.*, 2020 WL 95488, *3 (N.D. Tex. Jan. 8, 2020).  Johnson fails to describe any analysis.  Because Johnson failed to base his opinions on reliable methodology, the opinions are not admissible under Rule 702 and *Daubert*.

Nationwide asks the Court to strike Johnson's opinions and testimony because they are irrelevant.  Specifically, Nationwide argues that the jury can reach a decision on bad faith without expert testimony.  The Court agrees.  Johnson's conclusory opinions and testimony "would amount to simply telling the jury" that Nationwide acted in bad faith and are, therefore, inadmissible as irrelevant.  *See, e.g., Haymore v. Shelter Gen. Ins. Co.*, 2020 WL 1536571, *4 (S.D. Miss. Mar. 30, 2020).  On this basis also, Johnson's opinions and testimony are inadmissible.

The Court does not base its ruling on a consideration of whether it believes Johnson's opinions are correct or incorrect.  Instead, the Court bases its ruling on the absence of sufficient relevance and reliability, which renders the opinions unlikely to assist the jury.  *See Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005).  Therefore, the Court **grants** the Motion to Exclude Johnson's opinions and testimony.

## VI.    CONCLUSION AND ORDER

As explained above, it is hereby

**ORDERED** that Nationwide's Motion to Strike the Opinions and Testimony of Neil Hall [Doc. # 22] and Motion to Strike the Untimely Supplemental Report and Declaration of Neil Hall [Doc. # 38] are **DENIED**.  It is further

**ORDERED** that Nationwide's Motion to Strike the Opinion and Testimony of Kevin Funsch [Doc. # 23] is **DENIED**.  It is further

**ORDERED** that Nationwide's Motion to Strike the Opinions and Testimony of Gary Johnson [Doc. # 24] is **GRANTED**.

SIGNED at Houston, Texas, this **24th** day of **December, 2020**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE